IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERNARD HAMILTON,<br><br>       Plaintiff,<br><br>    v.<br><br>G. THOMSON, et al.,<br><br>       Defendants.<br>_____/ | No. C 09-0648 CW (PR)<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>(Docket nos. 114, 116) |

Plaintiff, a state prisoner incarcerated at San Quentin State Prison (SQSP), filed this civil rights action alleging that Defendants violated his constitutional rights in conjunction with the denial of a laptop computer to monitor his oxygen intake. Defendants filed a motion for summary judgment and a later-filed motion to dismiss. Plaintiff filed a cross-motion for summary judgment. The parties have filed oppositions. For the reasons discussed below, the Court denies Defendants' motion to dismiss, grants their motion for summary judgment and denies Plaintiff's cross-motion for summary judgment.

BACKGROUND

I. Procedural Background

This case has a lengthy history and is intertwined with an earlier case filed by Plaintiff, <u>Hamilton v. Adamik, et al.</u>, C 06-06268 CW (PR) (<u>Adamik</u>).

In 2006, Plaintiff filed <u>Adamik</u>, alleging prison officials at SQSP had acted with deliberate indifference to his serious medical

needs and retaliated against him because of his attempts to obtain medical care. In Adamik, Plaintiff requested the following for his medical needs: (1) ice; (2) a pulse oximeter; (3) a fan; (4) an air purifier; and (5) an oxygen pillow. Adamik, Doc. no. 1, Comp. at 53.

On February 7, 2008, a settlement conference was held before a Magistrate Judge and the case settled. Id., Doc. no. 49. However, on June 4, 2008, Plaintiff wrote a letter to the Magistrate Judge indicating that, although he thought the case had settled, there seemed to be a misunderstanding about the laptop he thought Defendants agreed to provide him and he was only willing to dismiss the case if he received a chrono for a laptop computer. Id., Doc. no 58. On June 13, 2008, Plaintiff filed a signed notice of settlement and request that the case be dismissed with prejudice. Id., Doc. no. 65 at 1-2. On July 7, 2008, the Court granted Plaintiff's request for dismissal with prejudice. Id., Doc. no. 66. On February 18, 2009, Plaintiff moved for reconsideration of the order of dismissal based on Defendants' alleged failure to comply with the terms of the settlement agreement. Id., Doc. no. 69.

While the motion for reconsideration in Adamik was pending, Plaintiff filed the instant case, raising claims of deliberate indifference to his serious medical needs, violations of the Americans with Disabilities Act, retaliation and breach of contract based on Defendants' violation of the settlement agreement in Adamik. The parties filed cross-motions for summary judgment and various other motions. Plaintiff voluntarily withdrew all claims other than a breach of contract claim against

2

Dr. E. Tootell, SQSP Chief Medical Officer (CMO) and a First Amendment retaliation claim against N. Grannis, Chief of Inmate Appeals (CIA) at the time at issue.  Doc. no. 99; Pl's Opp. at 2-3.

On March 26, 2012, the Court granted Plaintiff's motion for reconsideration in the Adamik case.  The Court ordered that the case be reopened and referred it to a Magistrate Judge to determine whether the settlement agreement had been breached. Adamik, Doc. no. 73.  Also, on March 26, 2012, because all of the remaining claims in this case appeared to involve the settlement agreement in Adamik, the Court denied all pending motions without prejudice, directed the Clerk to close this case and file all documents in this case in the Adamik case.  Doc. no. 99.

On June 27, 2012, the Adamik defendants filed a motion to enforce the settlement and to dismiss the case.  Adamik, Doc. no. 182.  On November 6, 2012, the Court adopted the Magistrate Judge's Report and Recommendation, concurring in his assessment that "although there is no doubt that Plaintiff entered into the 2008 settlement to . . . obtain a laptop computer, the settlement agreement does not include the provision of [this item] as [a term] of the settlement."  Id., Doc. no. 210 at 1:18-21.  The Court agreed with the Magistrate Judge's "'regretful[]' conclusion that the Court lacks the power to order Defendants to provide a laptop . . . to Plaintiff under the terms of the Notice of Settlement."  Id. at 1:24-26.  In that same order, Plaintiff was advised by the Court that, if he believed that he had a serious medical need that required a laptop, he was not precluded from filing a new and separate lawsuit raising such claims.  Id. at

3

1  2:2-5.  Plaintiff did not file a new lawsuit, but as discussed
2  below, he moved to re-open the instant case.
3      On June 4, 2013, the Court granted Plaintiff's motion to
4  reopen this case, denied his motion for summary judgment as
5  premature and granted him leave to file an amended complaint based
6  on his argument that the claims in this case were separate from
7  the settlement agreement adjudicated in Adamik.  Doc. no. 107 at
8  5.
9      On June 24, 2013, Plaintiff filed an amended complaint, which
10 is the operative complaint in this case.  Doc. no. 108.
11 II. Allegations in Amended Complaint
12      The following is a summary of the allegations in Plaintiff's
13 amended complaint.  Since Plaintiff's incarceration in 1981, he
14 has been diagnosed with a number of serious medical conditions
15 including: coronary artery disease, cardiomyopathy, chronic
16 obstructive pulmonary disease, hypertension, diabetes, asthma,
17 obesity hypoventilation syndrome, sleep apnea, renal failure, and
18 anemia.  In 2006, SQSP doctors determined that Plaintiff was at
19 high risk of sudden respiratory failure or sudden cardiac arrest
20 and that it was medically necessary for him to be on twenty-four
21 hour supplemental oxygen and that his sleep apnea be treated with
22 a Bi-PAP machine connected to oxygen support.  In 2007, SQSP
23 doctors and the former SQSP CMO wrote and approved a medical
24 chrono allowing Plaintiff to possess and use a pulse oximeter on a
25 permanent basis.
26      On February 7, 2008, the Magistrate Judge conducted an
27 initial settlement conference in the Adamik case where Dr. Tootell
28 indicated that Plaintiff's pulse oximeter was medically necessary

4

and the Adamik Defendants agreed to allow Plaintiff to keep the pulse oximeter as long as it remained medically necessary.  At the settlement conference, Defendants also agreed that, if Plaintiff submitted to a physical examination by Dr. Jones, they would comply with Dr. Jones' prescriptions for Plaintiff.  Plaintiff was examined by Dr. Jones, who determined that it was medically necessary for Plaintiff to have a laptop for downloading his pulse oximeter data.  However, Dr. Tootell denied the chrono for the laptop.  Plaintiff then refused to dismiss the Adamik case until Dr. Tootell approved the chrono for the laptop.

On May 9, 2008, another settlement conference was held before the Magistrate Judge.  The only issue to be resolved at that point was the failure of Dr. Tootell to approve the chrono for the laptop.  At the hearing, Dr. Tootell stated that she had done further research on the matter and that the laptop was medically necessary to improve Plaintiff's health.  She agreed that she would write a chrono for the laptop and would order it if Plaintiff would agree to dismiss the Adamik action.

Plaintiff agreed he would dismiss the action as soon as he received the chrono for the laptop from Dr. Tootell.  On May 30, 2008, Dr. Tootell wrote and approved a chrono for Plaintiff to have the laptop "permanently."  Upon receiving this chrono, Plaintiff wrote defense counsel that he had received it from Dr. Tootell and he was willing to dismiss the Adamik action.  On June 9, 2008, defense counsel filed Plaintiff's letter and notice of settlement and requested dismissal of the case.  On June 13, 2008, Plaintiff filed his own notice of settlement and request to dismiss the case with prejudice.  On July 7, 2008, the Court

5

dismissed the Adamik case.

Plaintiff did not receive the laptop. In November 2008, Plaintiff filed an administrative appeal requesting compliance with Dr. Tootell's agreement to provide him a laptop. On December 5, 2008, Dr. Tootell sent Plaintiff a new chrono discontinuing her original chrono for the laptop because the oximeter system software did not function on a laptop. On December 16, 2008, Dr. Tootell sent Plaintiff a letter admitting there was no problem with the software but continued to deny the laptop because laptops do not have a serial port, which is necessary to download the data from the oximeter system. Plaintiff sent Dr. Tootell information indicating that there are simple plug-in serial port adapter cards that will allow the data to be downloaded.

Plaintiff then filed another administrative appeal requesting the laptop as Dr. Tootell had agreed. That appeal was denied at every level of review, including the third level which was signed by CIA Grannis.

Plaintiff then filed the instant civil rights action in which he asserts that Dr. Tootell acted both in her individual and official capacities in entering into a contract with him to allow him permanently to have a laptop to monitor the data from his oximeter in exchange for his dismissal of the Adamik case. He asserts that Dr. Tootell breached that contract when she withheld the laptop even though Plaintiff kept his part of the bargain by dismissing the case.

Plaintiff asserts that CIA Grannis should not have reviewed his appeal of the denial of the laptop because CIA Grannis was a defendant in the Adamik case and, thus, she had a conflict of

6

interest in ruling on the laptop issue.  Plaintiff also asserts that CIA Grannis denied his third level appeal regarding the denial of the laptop in retaliation for Plaintiff's suing her in the Adamik case and naming her in other administrative grievances.

## DISCUSSION

Defendants first filed a motion for summary judgment on the following grounds: (1) the claim for breach of the settlement agreement in the Adamik case is barred by the doctrines of res judicata and collateral estoppel; (2) there is no evidence to raise a genuine issue of material fact that Dr. Tootell was deliberately indifferent to Plaintiff's serious medical needs; (3) there is no evidence to show a genuine issue of material fact that CIA Grannis violated Plaintiff's First Amendment or Due Process rights to file administrative appeals; and (4) Defendants are entitled to qualified immunity.

In Plaintiff's opposition to the summary judgment motion, he clarifies that his claim against Dr. Tootell is not for deliberate indifference to his serious medical needs but for breach of contract and that his claim against CIA Grannis is not based on the violation of his right to file an administrative appeal, as Defendants characterize it, but for retaliation.  Defendants then filed a motion to dismiss based upon lack of subject matter jurisdiction.  The Court first addresses the issue of subject matter jurisdiction.

I. Motion to Dismiss

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, . . . which is not to be expanded by judicial decree."  Kokkonen

7

v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); 28 U.S.C. § 1331 ("district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").[1] A federal court is presumed to lack jurisdiction unless the contrary appears affirmatively from the record. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 n.3 (2006). Federal courts have a duty to examine jurisdiction before proceeding to the merits of a case. S. Pac. Transp. Co. v. City of Los Angeles, 922 F.2d 498, 502 (9th Cir. 1990). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Defendants argue that there is no federal question jurisdiction because Plaintiff has clarified in his opposition that his claim against Dr. Tootell is a state law claim for breach of contract, not an Eighth Amendment claim for deliberate indifference, as Defendants assumed in their motion for summary judgment.

Defendants are correct that the breach of contract claim against Dr. Tootell is a state law claim which does not arise under the Constitution or federal statutes. However, Defendants overlook that Plaintiff's First Amendment retaliation claim against CIA Grannis arises under the Constitution. In light of the fact that the retaliation claim arises under the Constitution, the Court has original subject matter jurisdiction over it.

---

[1] Federal courts also have original jurisdiction of civil actions where the matter in controversy exceeds $75,000 and there is diversity of citizenship of all the parties. See 28 U.S.C. § 1332. Because all the parties in this case are citizens of California, diversity jurisdiction does not apply.

8

Because the Court has original jurisdiction over the retaliation claim, it exercises supplemental jurisdiction over the related state law contract claim against Dr. Tootell. See 28 U.S.C. § 1337(a)(where court has original jurisdiction, it may exercise supplemental jurisdiction over related state law claims).

Accordingly, Defendants' motion to dismiss for lack of subject matter jurisdiction is DENIED.

II. Defendants' Motion for Summary Judgment

A. Legal Standard

Summary judgment is only proper where the pleadings, discovery and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id.

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The burden then shifts to the non-moving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate

9

1  'specific facts showing that there is a genuine issue for trial.'"
2  Id. at 324.

3    Where the moving party will have the burden of proof on an
4  issue at trial, it must affirmatively demonstrate that no
5  reasonable trier of fact could find other than for the moving
6  party.  But on an issue for which the opposing party will have the
7  burden of proof at trial, the moving party need only point out
8  "that there is an absence of evidence to support the non-moving
9  party's case."  Id. at 323.  If the moving party discharges its
10 burden by showing an absence of evidence to support an essential
11 element of a claim or defense, it is not required to produce
12 evidence showing the absence of a material fact on such issues, or
13 to support its motion with evidence negating the non-moving
14 party's claim.  Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497
15 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404,
16 1409 (9th Cir. 1991).  If the moving party discharges its burden
17 by negating an essential element of the non-moving party's claim
18 or defense, it must produce affirmative evidence of such negation.
19 Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210
20 F.3d 1099, 1105 (9th Cir. 2000).  If the moving party does not
21 meet its initial burden of production by either method, the non-
22 moving party is under no obligation to offer any evidence in
23 support of its opposition.  Id.  This is true even though the non-
24 moving party bears the ultimate burden of persuasion at trial.
25 Id. at 1107.

26    In considering a motion for summary judgment, the court must
27 view the evidence in the light most favorable to the non-moving
28 party; if, as to any given fact, evidence produced by the moving

party conflicts with evidence produced by the non-moving party, the court must assume the truth of the evidence set forth by the non-moving party with respect to that fact. Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). When there are cross-motions pending, the court looks at all the evidence submitted in support of, and in opposition to, both motions in ruling on each motion. Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001).

B. Res Judicata and Collateral Estoppel

Defendants argue that Plaintiff's contract claim against Dr. Tootell in this case is barred by the doctrines of collateral estoppel and res judicata.

Under collateral estoppel, or issue preclusion, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. Montana v. United States, 440 U.S. 147, 153 (1979). Collateral estoppel bars the relitigation of issues explicitly litigated and necessary to the judgment. Hiser v. Franklin, 94 F.3d 1287, 1292 (9th Cir. 1996). To collaterally estop the relitigation of an issue under federal law: (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated by the party against whom preclusion is asserted; and (3) the

11

determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action. Gospel Missions v. City of Los Angeles, 328 F.3d 548, 553-54 (9th Cir. 2003). Collateral estoppel can be used defensively when a defendant raises it, as it is being used here, and can be used offensively when a plaintiff raises it. State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc., 425 F.3d 706, 713 n.3 (9th Cir. 2005). When it is used defensively, the party to be collaterally estopped must be the same as or in privity with the party in the prior proceeding. Hydranautics v. FilmTec Corp., 204 F.3d 880, 885 (9th Cir. 2000).

Collateral estoppel does not apply where the party against whom an earlier court decision is asserted did not have a full and fair opportunity to litigate the issue. Allen v. McCurry, 449 U.S. 90, 101 (1980). That a judgment was the result of the parties' stipulation of settlement does not detract from its being considered a final determination of the merits for the purposes of collateral estoppel. Green v. Ancora-Citronelle Corp., 577 F.2d 1380, 1383 (9th Cir. 1978) (stipulation of settlement and judgment was conclusive determination on the merits because parties entered it to adjudicate all issues related to the action).

Here, there is an identity of issues between the breach of contract claim and the issue litigated in the motion to enforce the settlement agreement in Adamik. As discussed above, the parties in Adamik entered into a settlement agreement that led to a dismissal with prejudice. Adamik, Doc. no. 204. Plaintiff filed a motion to reconsider the dismissal because he contended that Defendants had breached the agreement by failing to provide

12

him with a laptop. Id. at 3. This Court granted the motion for reconsideration, reopened the case and referred the matter to a Magistrate Judge for the limited purpose of determining whether Defendants had breached the settlement agreement. Id. at 1. Defendants filed a motion to enforce the settlement agreement and to dismiss the action, which was fully briefed and heard by the Magistrate Judge on August 17, 2012. Id. at 3. The Magistrate Judge considered the actual terms of the Settlement Agreement and the Notice of Settlement that was embodied in the order of dismissal. Id. at 4. He found that "the record shows that the permanent laptop . . . chrono that [is] referred to in the order of dismissal [was] integral to Plaintiff's dismissal of the action." Id. (referring to the permanent laptop chrono signed by Dr. Tootell on May 30, 2008). After reviewing cases addressing enforcement of settlement agreements, the Magistrate Judge concluded as follows:

> [A]lthough there is no doubt that Plaintiff entered the 2008 settlement to . . . obtain a laptop computer, the settlement agreement does not include the provision of [this item as a term] of the settlement. The Notice of Settlement requires that "Plaintiff will be examined by SQSP doctors to determine whether he suffers from autonomic neuropathy, and if so, the appropriate treatment for that condition." The . . . laptop chrono [is] described by Plaintiff as [an item] that [was] provided "pursuant to the [a]foresaid agreement", but [it is] not part of the agreement. Defendants examined Plaintiff, and in so doing, fulfilled that provision of the settlement agreement. The undersigned regretfully concludes that the district court lacks the power to order Defendants to provide a laptop . . . to Plaintiff under the terms of the Notice of Settlement.

Id. at 5-6.

Based on this finding, the Magistrate Judge recommended that the district court grant Defendants' motion to enforce the settlement and dismiss the action. Id. at 6. The district court

13

adopted the Magistrate Judge's Report and Recommendation in full, including the conclusion that the Court lacked the power to order Defendants to provide a laptop to Plaintiff. Adamik, Doc. no. 210.

Plaintiff alleges here that Dr. Tootell signed the permanent chrono so that Plaintiff would settle and dismiss the Adamik case. This is exactly the same issue that was litigated in Defendants' motion to enforce the settlement in Adamik. Notably, in ruling on Defendants' motion, the Magistrate Judge specifically mentioned the permanent chrono for a laptop signed by Dr. Tootell that Plaintiff here alleges comprises a contract between himself and Dr. Tootell. No matter how Plaintiff characterizes the permanent chrono, the issue of whether it required Defendants to provide him with a laptop was fully litigated in Adamik. Furthermore, Plaintiff cannot dispute that he was a party to the prior proceeding.

Plaintiff's attempt to distinguish the issue here from the Adamik litigation by characterizing the chrono as a contract between himself and Dr. Tootell in her individual capacity fails because the chrono is signed by Dr. Tootell in her official capacity as CMO of SQSP. See Comp., Ex. 7. Furthermore, the chrono is not a contract between Plaintiff and Dr. Tootell as an individual. Under California law, a contract requires: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient consideration. Cal. Civ. Code § 1550. Because Dr. Tootell submitted the chrono to Plaintiff as part of the settlement negotiations in the Adamik case, in which she was not a named Defendant, she, individually, did not receive consideration for it.

14

Not only are the issues in the two cases identical, but the issue was actually litigated in Adamik and necessary to the judgment. Therefore, the issue of whether Plaintiff has a right to receive a laptop computer is barred from being relitigated here by the doctrine of collateral estoppel.

Plaintiff's only argument against collateral estoppel is that the Court rejected this argument when it granted his motion to reopen this case because the Court stated that it relied on Plaintiff's argument that his claims in this case were different from the claims addressed in Adamik. But, at that time, the issue of collateral estoppel was not before the Court. Therefore, the Court's ruling in the Order granting Plaintiff's motion to reopen this case did not foreclose the determination of whether the contract claim is barred by res judicata or collateral estoppel.

Accordingly, the Court grants Defendants' motion for summary judgment on the breach of contract claim on the ground that it is barred by collateral estoppel. Because the Court grants summary judgment on collateral estoppel grounds, it need not rule on Defendants' res judicata argument.

C. Retaliation Claim

Plaintiff asserts that CIA Grannis denied his administrative appeal to obtain the laptop in retaliation for Plaintiff's naming her as a Defendant in the Adamik case and for filing other grievances against her. He also claims that, as a Defendant in the Adamik case, CIA Grannis had a conflict of interest in ruling on his administrative appeal of the laptop denial because it related to the settlement of the Adamik case.

A claim may be stated under § 1983 where a plaintiff alleges retaliation by state actors for the exercise of his First

15

Amendment rights. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84 (1977). The plaintiff must show that the type of activity he was engaged in was protected by the First Amendment and that the protected conduct was a substantial or motivating factor for the alleged retaliatory acts. Id. at 287; Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence).

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Retaliation is not established simply by showing adverse activity by the defendant after protected speech; rather, the plaintiff must show a nexus between the two. Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of post hoc, ergo propter hoc, i.e., "after this, therefore because of this"). However, retaliatory motive may be shown by the timing of the allegedly retaliatory act and inconsistency with previous actions, as well as direct evidence. Bruce v. Ylst, 351 F.3d 1283, 1288-89 (9th Cir. 2003).

In CIA Grannis's declaration, she states the following. At the time at issue, she was Chief of the Inmate Appeals Branch, which was receiving 60,000 to 70,000 appeals per year. Grannis Dec. at ¶ 7. She was one of three people assigned to review the

16

appeals and, thus, she reviewed many appeals. Id. at ¶ 6. Because of her position and because she reviewed many appeals, she was named as a defendant in hundreds, if not thousands, of inmate lawsuits. Id. at ¶ 9.

Under these circumstances, the proximity in time between Plaintiff's administrative appeal of the laptop denial as a breach of the Adamik settlement and CIA Grannis's denial of that administrative appeal does not raise an inference of retaliation because the action of denying the appeal necessarily occurred proximate to Plaintiff's filing the appeal. Otherwise the denial of all administrative grievances and appeals could be inferred to be retaliatory for an inmate's filing of a grievance. The fact that CIA Grannis was named as a defendant in Plaintiff's lawsuit did not result in a conflict of interest with her role as Chief of the Inmate Appeals Branch. Id. Nor did CIA Grannis's denial of the appeal raise an inference that she was denying it in retaliation for any conduct undertaken by Plaintiff.

In his opposition, Plaintiff argues that the statements in CIA Grannis's declaration do not apply to his case because none of the other appeals to which she refers requested compliance with an agreement made in exchange for dismissing a lawsuit against her. Opp'n at 15. Plaintiff's argument is not persuasive. First, he does not submit evidence substantiating the argument that his appeal was different than any of the hundreds or thousands of other appeals CIA Grannis denied. Second, Plaintiff does not submit evidence of a nexus between his lawsuit and CIA Grannis's denial of his appeal of the laptop denial. See Huskey, 204 F.3d at 899. Therefore, even taking the evidence in the light most

17

favorable to Plaintiff, which is necessary on Defendants' motion for summary judgment, Plaintiff has not raised a dispute of material fact showing that CIA Grannis denied his appeal in retaliation for the Adamik litigation and other grievances he filed against her. Accordingly, summary judgment is granted in favor of CIA Grannis on this claim.[2]

III. Plaintiff's Cross-Motion for Summary Judgment

On Plaintiff's cross-motion for summary judgment, the evidence must be viewed in favor of Defendants, as the non-moving parties. See Leslie, 198 F.3d at 1158; Intel Corp. v. Hartford Acc. & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Defendants object to much of the evidence Plaintiff submits in support of his motion as not relevant, inadmissible hearsay and lacking foundation. The Court need not rule on these objections individually and does not consider inadmissible evidence.

Because Plaintiff bears the burden of proof on all the issues at trial, on his motion for summary judgment he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. See Celotex, 477 U.S. at 323. Because Defendants' motion for summary judgment is granted, Plaintiff's motion must necessarily be denied. Accordingly, Plaintiff's cross-motion for summary judgment is DENIED.

---

[2] In the introduction to their motion for summary judgment, Defendants raise the question whether they are entitled to qualified immunity; however, they do not address this issue in the body of their motion. They devote one sentence to it in their reply. This is insufficient to support an argument that qualified immunity shields them from liability. In any event, the Court finds it unnecessary to rule on the motion for summary judgment based on qualified immunity.

CONCLUSION

Based on the foregoing, the Court orders as follows:

1. Defendants' motion to dismiss is DENIED.  Doc. no. 114.

2. Defendants' motion for summary judgment is GRANTED.  Doc. no. 116.

3. Plaintiff's cross-motion for summary judgment is DENIED.

4. The Clerk of the Court shall enter judgment in favor of Defendants.

5. This Order terminates Docket nos. 114 and 116.

IT IS SO ORDERED.

Dated: 2/7/2014

CLAUDIA WILKEN
United States District Judge